## MISSOURI PACIFIC TRANSP. CO. v. BENNETT.

### No. 10920.

Circuit Court of Appeals, Eighth Circuit.

March 7, 1938.

Yale C. Holland, of Omaha, Neb. (J. A. C. Kennedy, G. L. DeLacy, E. J. Svoboda, and R. E. Svoboda, all of Omaha, Neb., on the brief), for appellant.

C. F. Connolly, of Omaha, Neb. (James T. English, W. C. Fraser, and Crofoot, Fraser, Connolly & Stryker, all of Omaha, Neb., on the brief), for appellee.

Before STONE, SANBORN, and WOODROUGH, Circuit Judges. .

WOODROUGH, Circuit Judge.

Mrs. Minnie B. Bennett brought this action against the Missouri Pacific Transportation Company to recover damages for personal injuries sustained while she was riding as a passenger on the defendant's bus from Shubert, Neb., to Omaha, Neb.

From a verdict and judgment in her favor, the transportation company appeals.

It appears that the bus was proceeding north on the paved highway at about 7:45 o'clock on the morning of January 7, 1935. There was a heavy fog or mist, the paving was wet and slippery, there were some icy places on it, and visibility was poor. It was not totally dark, but dark enough to necessitate headlights, and those on the bus were turned on and in good order. All at once the bus driver, who was looking forward, noticed something dark in the fog, and getting a few feet nearer saw that it was the rear end of a truck. It was a cattle truck; "kind of a home-made light brown natural wood color." It was going slowly, perhaps eight or ten miles an hour, in the same direction as the bus, and it had no taillights. The bus driver honked his horn and applied his brakes simultaneously, but the truck driver paid no attention, at least he did not change either his speed or position on the highway. Owing to the slippery condition of the pavement, the bus driver applied his brakes gradually to avoid locking the wheels and skidding. He then turned the bus to the right, and the left front fender of the bus and the headlight thereon came into collision with the right rear end of the truck. The bus weighed 31,000 pounds without the passengers and luggage, and the only damage done to it was to bend the fender and break the light. The truck did not stop but hurried on. The bus driver pried the bent fender off the tire with a fence post and the bus went on. None of the passengers appears to have been jolted or hurt except that the plaintiff claimed that the force of the collision had thrown her about violently in her seat and against various portions of the bus and had injured her.

She alleged in her petition that the defendant was guilty of negligence in eight specified particulars, but on the trial of the case the court was of the opinion that there was only one question of negligence to be submitted to the jury. The motion of the defendant for directed verdict was overruled and the court instructed: "There has been testimony as to how the driver applied the brakes after the truck became visible by applying the air gradually off and on a number of times, and also testimony as to the condition of the pavement at this place as to being slippery. I think you would not be justified in finding that

the defendant was negligent because of the way the brake was applied. There has been no evidence of any better way or other evidence of what is a proper way to apply brakes under such circumstances. So you could not find that the defendant was negligent in the way the brake was used."

"There was a time and a place just before the collision when the bus driver first saw the truck ahead of him or would have seen the truck if he had been using his highest degree of care. You are to determine this time and place from the evidence. After that time and place it was the duty of the defendant's driver to use his highest degree of care to so steer and direct the course of the bus as to avoid a collision, if that was possible by the use of such care."

"The driver of the bus was confronted with an emergency in making his decision where to turn his bus. In such an emergency it was the duty of the driver to use the highest degree of care to make the right decision, but if he used such degree of care he would not be negligent even if the decision he made turned out to be wrong."

"But I think there is a question for the jury to decide as to whether or not the defendant's driver was negligent, that is, the question whether he failed to use this highest degree of care I have mentioned in the way he turned the bus after the truck became visible in front."

"Was the defendant guilty or not guilty of negligence in that the driver failed to turn his truck to the left on the highway and proceed in that direction, and would such turning have avoided the injury to the plaintiff?"

"Should he have kept on trying to turn to the left and sounding his horn to request that the truck should pull over to the right side?"

"It is for you to consider all the circumstances whether I have mentioned them or not, and to decide whether or not the bus driver used the highest degree of care in doing what he did in steering and directing his bus after the truck was visible in front of him. If you find that the plaintiff has proved that he did not use this highest degree of care in the respect that I have mentioned, and that this lack of care was the proximate cause of the collision, then you should find the defendant guilty of negligence. If you find that

the bus driver did use this highest degree of care in steering his bus, then you should find the defendant was not guilty of negligence, and this would require that you should find a verdict for the defendant."

"You will understand also, further, that the only question of negligence I am submitting to you, as to the defendant, is this one question, whether or not the defendant's driver was or was not negligent in the way he undertook to and did steer and direct the bus after that moment when he either saw the truck or should have seen it, if he had been using the highest degree of care to have seen it."

In view of these instructions, the verdict of the jury amounts to a finding that the bus driver was negligent in failing to exercise the high degree of care incumbent upon a common carrier of passengers when he decided in the emergency confronting him to turn and steer his bus to the right of the truck instead of towards the left of it.

■ Our question on the appeal is whether there was any substantial testimony to sustain such finding. If there was not, there must be reversal because the finding is the only basis for the verdict and judgment. Appellant has preserved the point by its motion for directed verdict, made at the close of all the evidence, in which it asserted that the evidence failed to establish its negligence in any of the respects charged and that the evidence was insufficient to sustain a verdict in plaintiff's favor against defendant. The overruling of the motion is assigned as error and error is specifically assigned in "the submitting to the jury of the issue as to whether or not the defendant's driver was guilty of negligence in the manner in which he guided and steered the bus after discovering the truck."

■ The paved highway was 18 feet wide marked down the middle with a black stripe, and there was a shoulder about 8 feet wide on either side. The driver and all the passengers who testified except the plaintiff said that the truck was running in the middle of the paving astride the black mark. The plaintiff herself at the time of the accident wrote upon a card above her signature that the truck was running in the middle of the road. She was sworn and testified by deposition before the trial, and then deposed that she was in her seat in a light doze asleep immediately before the collision and was not looking at the

truck. "Didn't have time to be looking at nothing." On the trial she said the truck was running on the right-hand side of the road, but she "just couldn't say whether any part of it was over the centre of the black line or not." On cross-examination she said: "Q. I think your statement was that the truck was just over towards the centre of the road but not clear across the line? A. Yes, sir."

It is apparent as reflected in the comment of the trial court that when the truck loomed out of the fog close in front of the bus driver he was confronted with an emergency in which he had to decide whether he would turn his bus to the right of the truck or to the left of it. There is no suggestion that he could in the exercise of care have gone directly ahead into the rear of the truck.

We find no substantial testimony in the record to justify an inference that steering the bus to the left would have been safer under the circumstances disclosed than steering it to the right.

It was no shorter from the right front fender of the bus to the left corner of the truck's end than from the bus' left front to the truck's rear right. The practically conclusive evidence was that the driver took the shortest, and therefore the safest, course to avoid collision. Another most potent consideration is that when the truck loomed out of the fog so close ahead of the bus driver that he was unable to avoid the slight contact he made with it, the same fog that had obscured the truck made it impossible for him to know what southbound traffic was or might be moving towards him on the west side of the highway. He testified very simply: "I turned the bus to the right. If I went to the left and something came from that side it would be worse."

Upon careful consideration of the testimony we think that the danger to the bus and its passengers attendant upon steering to the left into the lane of southbound traffic, obscured as it was with fog, was manifest. In this situation, it cannot be said that the driver was negligent because he did not risk that danger.

The judgment must therefore be reversed for want of substantial testimony to sustain the jury's finding. Numerous other matters are ably argued, but, as the same questions may not recur upon another trial, we do not discuss them.

Reversed and remanded.